**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ALYSON MICHELE CARRIERE**                    **CIVIL ACTION**

**VERSUS**                                                        **NO.  18-8834**

**ANDREW SAUL, COMMISSIONER OF THE**          **SECTION: "G"(2)**
**SOCIAL SECURITY ADMINISTRATION[1]**

## ORDER AND REASONS

Before the Court are Plaintiff Alyson Michele Carriere's ("Plaintiff") objections[2] to the
Report and Recommendation of the United States Magistrate Judge assigned to the case.[3]  Plaintiff
filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant, the
Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"),
denying her claim for a period of disability and disability insurance benefits ("DIB") under the
Social Security Act (the "Act").[4] The Magistrate Judge recommended that the Administrative Law
Judge's ("ALJ") decision denying Plaintiff's claim be affirmed and the case be dismissed with
prejudice.[5] Plaintiff objects, arguing that the ALJ's decision was not supported by substantial
evidence.[6] Having considered Plaintiff's objections, the Magistrate Judge's Report and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul, the Commissioner of the Social Security
Administration, is automatically substituted as a party in place of Nancy Berryhill, the former Acting Commissioner
of the Social Security Administration.

[2] Rec. Doc. 15.

[3] Rec. Doc. 14.

[4] Rec. Doc. 1.

[5] Rec. Doc. 14 at 35.

[6] Rec. Doc. 15.

1

Recommendation, the record, and the applicable law, the Court overrules Plaintiff's objections, adopts the Magistrate Judge's Report and Recommendation, and dismisses this action with prejudice.

## I. Background

### A.  Procedural History

Plaintiff filed an application for a period of disability and DIB on March 27, 2015, alleging that she had been disabled since August 8, 2014.[7] After Plaintiff's claim was denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on February 24, 2016.[8] On May 6, 2016, the ALJ issued a decision denying Plaintiff's application for benefits.[9] Plaintiff requested a review of the ALJ's decision by the Social Security Appeals Council. On March 30, 2017, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for additional proceedings and to allow the ALJ to reconcile the opinion of Plaintiff's treating physician, Dr. Daniel Trahant, with the residual functional capacity ("RFC") determination made by the ALJ.[10]

Upon remand, the ALJ conducted a second hearing on July 11, 2017.[11] Plaintiff and a vocational expert testified at the hearing.[12] On November 28, 2017, the ALJ issued a decision

---

[7] Adm. Rec. at 246.

[8] *Id.* at 66–92.

[9] *Id.* at 47–54.

[10] *Id.* at 40–43.

[11] *Id.* at 93–129.

[12] *Id.*

denying Plaintiff's application for benefits.[13] The ALJ analyzed Plaintiff's claim pursuant to the

five-step sequential evaluation process.[14] At step one, the ALJ concluded that Plaintiff had not

engaged in substantial gainful activity since August 8, 2014, the alleged onset date, through the

date she was last insured, June 30, 2016.[15] At step two, the ALJ concluded that through the date

last insured, Plaintiff had the following severe impairments: "degenerative disc disease of the

lumbar and cervical portions of the spine."[16] At step three, the ALJ found that through the date last

---

[13] *Id.* at 19–28.

[14] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[15] Adm. Rec. at 22. "A claimant is eligible for benefits only if the onset of the qualifying medical impairment [or combination of impairments] began on or before the date the claimant was last insured." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

[16] Adm. Rec. at 22.

insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[17]

At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain limitations.[18] At step four, the ALJ also found that through the date last insured, Plaintiff was capable of performing her past relevant work as an office manager, scheduler, receptionist, and insurance clerk.[19] Therefore, the ALJ determined that Plaintiff was not disabled from August 8, 2014, the alleged onset date, through June 30, 2016, the date last insured.[20]

Plaintiff requested review of the second decision by the Appeals Council. The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on August 14, 2018.[21] On September 21, 2018, Plaintiff filed a Complaint in this Court seeking judicial review pursuant to Section 405(g) of the Act.[22] This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On December 3, 2018, the Commissioner answered the Complaint.[23]

---

[17] *Id.*

[18] *Id.* at 23. These limitations were that Plaintiff could not "lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for a total of 2 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday; no overhead reaching with the dominant upper extremity; occasional overhead reaching with the left non-dominant upper extremity; and never climb ladders, ropes, scaffolds." *Id.*

[19] *Id.* at 27.

[20] *Id.* at 28.

[21] *Id.* at 1–6.

[22] Rec. Doc. 1.

[23] Rec. Doc. 6.

On December 29, 2018, Plaintiff filed a memorandum arguing that the ALJ erred by: (1) relying on the vocational expert's testimony in finding that Plaintiff had the residual functional capacity to perform the physical reaching requirements of her past relevant work; (2) finding that Plaintiff's headaches were not a severe impairment; and (3) finding that Plaintiff's condition did not meet Listing 1.04.[24] On March 26, 2019, the Commissioner filed a memorandum arguing that substantial evidence supported the ALJ's determination.[25]

**B.      *The Magistrate Judge's Report and Recommendation***

On June 19, 2019, the Magistrate Judge recommended that the ALJ's decision be affirmed and Plaintiff's case be dismissed with prejudice.[26] First, the Magistrate Judge determined that the ALJ properly relied on the vocational expert's testimony in finding that Plaintiff could perform the physical reaching requirements of her past sedentary work.[27] The Magistrate Judge noted that the Dictionary of Occupational Titles ("DOT") identifies the reaching requirement for these jobs as "Frequently—Exists from 1/3 to 2/3 of the time."[28] When asked to explain how an individual with overhead reaching limitations could perform jobs involving frequent reaching, the vocational expert testified that the DOT does not "parse out" how much overhead reaching is required in a

---

[24] Rec. Doc. 9-3 at 9. The Magistrate Judge noted that instead of filing a memorandum of facts and law as ordered, Plaintiff filed a motion for summary judgment. Rec. Doc. 14 at 2. The Magistrate Judge treated the summary judgment motion as a memorandum of facts and law. *Id.* Plaintiff does not object to this portion of the Report and Recommendation. *See* Rec. Doc. 15. Accordingly, this Court also treats the motion for summary judgment as a memorandum of facts and law.

[25] Rec. Doc. 13.

[26] Rec. Doc. 14 at 35.

[27] *Id.* at 21.

[28] *Id.* (quoting DICOT 169.167-034 (G.P.O.), 1991 WL 647430; DICOT 237.367-038 (G.P.O.), 1991 WL 672192; DICOT 219.387-014 (G.P.O.), 1991 WL 671978).

given job as opposed to simple extension of the arm without an overhead component, and an individual with overhead reaching limitations could perform Plaintiff's past sedentary work.[29] To the extent that the vocational expert's testimony differed from the DOT, the Magistrate Judge found that the ALJ could rely on the vocational expert's testimony.[30] Moreover, the Magistrate Judge determined that the vocational expert's testimony was not in direct conflict with the DOT reaching requirements because Plaintiff was only limited in her overhead reaching abilities.[31] Accordingly, the Magistrate Judge found that the ALJ properly relied on the vocational expert's testimony in finding that Plaintiff could perform the physical reaching requirements of her past sedentary work.[32]

Second, the Magistrate Judge determined that the ALJ properly found that Plaintiff's headaches were not a severe impairment.[33] The Magistrate Judge noted that Plaintiff's hearing testimony, her subjective reports to doctors, and the objective medical evidence demonstrate that her headaches were mitigated by prescribed pain medication.[34] Additionally, the Magistrate Judge found that Plaintiff ignored the advice of multiple physicians in failing to receive surgery or epidural steroid injections to alleviate her atypical, long-term headaches.[35] Therefore, the

---

[29] *Id.* at 123.

[30] *Id.* (citing 20 C.F.R. § 404.1566(d), (e); *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000); *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)).

[31] *Id.* at 23.

[32] *Id.* at 24.

[33] *Id.*

[34] *Id.* at 28.

[35] *Id.* at 28–29.

Magistrate Judge determined that the ALJ did not err in finding that Plaintiff's typical headaches were non-severe and did not significantly limit Plaintiff's physical or mental ability to do basic work activities, and that Plaintiff refused to follow her treating physicians' treatment plan without good reason, thereby precluding a finding of disability as to Plaintiff's atypical headaches.[36] Furthermore, even though the ALJ did not find Plaintiff's headaches to be a severe impairment, the Magistrate Judge noted that the ALJ considered all of Plaintiff's impairments in assessing her disability and finding that Plaintiff was capable of performing her past sedentary work with certain postural limitations.[37] Accordingly, because Plaintiff's case "did not turn on whether or not [Plaintiff's headache] impairment was severe but on subsequent steps in the analysis," the Magistrate Judge determined that the ALJ's failure to find that Plaintiff's headaches were severe was irrelevant and nonprejudicial to Plaintiff.[38]

Third, the Magistrate Judge determined that the ALJ properly found that Plaintiff's impairments did not meet the criteria of Listing 1.04.[39] The Magistrate Judge noted that Plaintiff's treating physicians recommended that she undergo spinal surgery, and Plaintiff's failure to follow her physicians' treatment plans to receive surgery without good reason was grounds for a finding that Plaintiff was not disabled.[40] Moreover, the Magistrate Judge found that Plaintiff's argument that her impairment met the criteria set forth at Listing 1.04 was not substantially supported by the

---

[36] *Id*. at 29.

[37] *Id*. at 29.

[38] *Id.* (quoting *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015)).

[39] *Id*. at 30.

[40] *Id*. at 31–32.

objective medical evidence.[41] Accordingly, because the ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence, the Magistrate Judge concluded that the ALJ's decision was supported by substantial evidence.[42]

## II. Objections

### A.    *Plaintiff's Objections to the Report and Recommendation*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation.[43] Plaintiff raises two objections to the Report and Recommendation: (1) the Magistrate Judge erred in finding that the ALJ properly relied on the vocational expert's testimony and (2) the Magistrate Judge erred in finding that Plaintiff's headaches were a non-severe impairment.[44]

First, Plaintiff objects to the Magistrate Judge's finding that the vocational expert's testimony was properly relied on in finding that Plaintiff could return to her past sedentary work.[45] Plaintiff contends that the case was originally remanded by the Social Security Appeals Council for the ALJ to elicit testimony from the vocational expert regarding why his testimony differed from the DOT regarding the reaching requirement for Plaintiff's past relevant work, but on remand the vocational expert gave similar testimony about the reaching requirement that Plaintiff contends was once again in direct conflict with the DOT.[46] Furthermore, Plaintiff argues that the vocational

---

[41] *Id.* at 32–33.

[42] *Id.* at 35.

[43] Rec. Doc. 15.

[44] *Id.* at 1.

[45] *Id.* at 6.

[46] *Id.* at 7.

expert's testimony was unsubstantiated and subjective.[47] Accordingly, Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony to find that Plaintiff could perform her past work, and instead the ALJ should have adopted the vocational information set out in the DOT.[48] By failing to obtain an explanation for the conflicts between the DOT and the vocational expert's testimony, Plaintiff asserts that the ALJ failed to comply with the remand order of the Appeals Council and the ALJ's decision should be reversed.[49]

Second, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supported the ALJ's determination that Plaintiff's headaches were a non-severe impairment.[50] Plaintiff notes that the Magistrate Judge highlighted instances in the record where Plaintiff refused injections or surgery as a treatment plan.[51] However, Plaintiff contends that her actions do not constitute a failure to follow the prescribed treatment as the Magistrate Judge characterized it.[52] In support, Plaintiff cites Social Security Regulation 82-59, which provides that "[w]here the claimant fears undergoing prescribed surgery, the treating physician should be informed of this fact and asked about his or her current recommendation(s) for treatment. If the treating source decides against surgery, there is no issue of 'failure' unless the patient refused to cooperate in an

---

[47] *Id.* at 7–8 (citing Adm. Rec. at 123–26).

[48] *Id.* at 8.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 9.

alternative recommended course of treatment."[53] Plaintiff contends that she informed her physician of her fears of surgery and of needles, and instead opted for more conservative treatment.[54]

Additionally, Plaintiff asserts that the Magistrate Judge erroneously determined that the ALJ's failure to consider Plaintiff's headaches to be a severe impairment was not harmful because the ALJ considered the impairment in the subsequent steps.[55] Plaintiff notes that *Dise v. Colvin*, the Fifth Circuit opinion the Magistrate Judge cited to support this proposition, is an unpublished opinion and has no precedential value.[56] Plaintiff argues that the Magistrate Judge's reasoning is at odds with the purpose of the five-step sequential evaluation.[57] According to Plaintiff, if the ALJ had found Plaintiff's headaches to be a severe impairment, Plaintiff would have more appropriately been assessed an RFC that included a limitation of being off-task up to 15 percent of the work day.[58] Plaintiff points to the vocational expert's testimony that such an individual would not be able to sustain employment.[59] Accordingly, Plaintiff contends that the ALJ's to failure to find that Plaintiff's headaches constitute a severe impairment is a harmful legal error and requires reversal.[60]

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* (citing 630 F. App'x 322 (5th Cir. 2015)).

[57] *Id.*

[58] *Id.* at 9–10.

[59] *Id.* at 10.

[60] *Id.*

## B.       The Commissioner's Response

In response, the Commissioner asserts that Plaintiff does not present any new issues or arguments in objection to the Report and Recommendation.[61] According to the Commissioner, Plaintiff reiterates her previous arguments and ignores significant portions of the Magistrate Judge's findings.[62] Therefore, the Commissioner urges this Court to adopt the Magistrate Judge's Report and Recommendation.[63]

## III. Standard of Review

### A.       Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[64]  The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[65] A district court's review is limited to plain error of parts of the report which are not properly objected to.[66]

### B.       Standard of Review of Commissioner's Final Decision on DIB Benefits

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

---

[61] Rec. Doc. 19 at 1.

[62] *Id.*

[63] *Id.*

[64] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[65] *Id.*

[66] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

remanding the cause for a rehearing."[67] Appellate review of the Commissioner's denial of DIB benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[68] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[69] The Court must review the whole record to determine if such evidence exists.[70] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[71] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[72] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[73]

---

[67] 42 U.S.C. § 405(g).

[68] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[69] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[70] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[71] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[72] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[73] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

# IV. Law and Analysis

### A.    Applicable Law on Qualification for DIB Benefits

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[74] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[75] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[76] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[77]

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 8, 2014, the alleged onset date, through the date she was last insured, June 30, 2016.[78] At step two, the ALJ concluded that through the date last insured, Plaintiff had the following severe

---

[74] 42 U.S.C. § 423(d)(1)(A).

[75] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[76] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[77] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[78] Adm. Rec. at 22. "A claimant is eligible for benefits only if the onset of the qualifying medical impairment [or combination of impairments] began on or before the date the claimant was last insured." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

impairments: "degenerative disc disease of the lumbar and cervical portions of the spine."[79] At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[80]

The ALJ found that through the date last insured, Plaintiff had the RFC to perform sedentary work with certain limitations.[81] These limitations were that Plaintiff could not "lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for a total of 2 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday; no overhead reaching with the dominant upper extremity; occasional overhead reaching with the left non-dominant upper extremity; and never climb ladders, ropes, scaffolds."[82] Based on this RFC, the ALJ found that through the date last insured, Plaintiff was capable of performing her past relevant work as an office manager, scheduler, receptionist, and insurance clerk.[83] Therefore, the ALJ determined that Plaintiff was not disabled from August 8, 2014, the alleged onset date, through June 30, 2016, the date last insured.[84] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[85]

---

[79] Adm. Rec. at 22.

[80] *Id.*

[81] *Id.* at 23.

[82] *Id.*

[83] *Id.* at 27.

[84] *Id.* at 28.

[85] *See Perez*, 415 F.3d at 461

*B.*     *Analysis*

Plaintiff raises two objections to the Report and Recommendation.[86] First, Plaintiff objects to the Magistrate Judge's finding that the vocational expert's testimony was properly relied on in finding that Plaintiff could return to her past sedentary work.[87] Second, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supported the ALJ's determination that Plaintiff's headaches were a non-severe impairment.[88] Accordingly, the Court addresses each of these issues in turn.

### 1.     Whether the ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff objects to the Magistrate Judge's finding that the vocational expert's testimony was properly relied on in finding that Plaintiff could return to her past sedentary work.[89] Plaintiff contends that the case was originally remanded by the Social Security Appeals Council for the ALJ to elicit testimony from the vocational expert regarding why his testimony differed from the DOT regarding the reaching requirement for Plaintiff's past relevant work, but on remand the vocational expert gave unsubstantiated and subjective testimony about the reaching requirement that Plaintiff contends was once again in direct conflict with the DOT.[90]

---

[86] Rec. Doc. 15 at 1.

[87] *Id.* at 6.

[88] *Id.* at 8.

[89] *Id.* at 6.

[90] *Id.* at 7.

The Appeals Council initially vacated the ALJ's decision and remanded the case to the ALJ for additional proceedings and to allow the ALJ to reconcile the opinion of Plaintiff's treating physician, Dr. Daniel Trahant, with the RFC determination made by the ALJ.[91] The Appeals Council noted that Dr. Trahant found Plaintiff capable of a reduced range of sedentary work with limited ability to reach in all directions, including overhead, and this specific limitation did not comport with the RFC determination made by the ALJ or the finding that Plaintiff could perform her past relevant work.[92] Accordingly, the Appeals Council remanded the case for further consideration of the treating source opinion, the RFC determination, and Plaintiff's ability to perform her past relevant work.[93] The Appeals Council also noted that "[i]f warranted by the expanded record," the ALJ should "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base" and "resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles."[94]

On remand, the ALJ found that through the date last insured, Plaintiff had the RFC to perform sedentary work with certain limitations.[95] These limitations included "no overhead reaching with the dominant upper extremity" and "occasional overhead reaching with the left non-

---

[91] Adm. Rec. at 40–43.

[92] *Id.*

[93] *Id.* at 41–42.

[94] *Id.* at 42.

[95] *Id.* at 23.

dominant upper extremity."[96] The ALJ noted that Dr. Trahant had limited Plaintiff's reach in all directions, including overhead.[97] However, the ALJ did not accept this opinion because she found that the opinion was not sufficiently described and not supported by the objective medical evidence.[98]

Based on this RFC, the ALJ found that through the date last insured, Plaintiff was capable of performing her past relevant work as an office manager, scheduler, receptionist, and insurance clerk.[99] The ALJ relied on the vocational expert's opinion to reach this determination, finding that Plaintiff's past relevant work was "not eliminated by the overhead reaching limitations despite the overhead reaching described as frequent reaching in the DOT."[100] In support, the ALJ pointed to the vocational expert's testimony that "these jobs [we]re not eliminated by the overhead reaching limitations despite that reaching is described as frequent in the DOT. The DOT does not distinguish between reaching directions, i.e. lateral, overhead or forward."[101]

Specifically, the DOT identifies the reaching requirement for these jobs as "Frequently— Exists from 1/3 to 2/3 of the time," but it does not distinguish the direction by which such reaching must be performed.[102] During the second hearing, the vocational expert testified that the DOT does

---

[96] *Id.*

[97] *Id.* at 26.

[98] *Id.*

[99] *Id.* at 27.

[100] *Id.*

[101] *Id.*

[102] DICOT 169.167-034 (G.P.O.), 1991 WL 647430; DICOT 237.367-038 (G.P.O.), 1991 WL 672192; DICOT 219.387-014 (G.P.O.), 1991 WL 671978.

not "parse out" how much overhead reaching is requited in a given job as opposed to reach involving simple extension of the arms with no overhead component.[103] The vocational expert opined that "the ability to reach overhead occasionally with the nondominant extremity is not going to affect" Plaintiff's ability to perform her past sedentary work, "even though they are described as requiring frequent reaching in any direction."[104] The vocational expert acknowledged that this was his opinion and that another expert may disagree with that opinion.[105] The vocational expert also acknowledged that the opinion was based on his job placement experience, but he could not identify "a specific place" where such a restriction occurred because he had not personally "placed somebody with that type of restriction in a clerical position" for some time.[106]

The Fifth Circuit "has recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job."[107] "The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."[108] Therefore, the Fifth Circuit "has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of

---

[103] Adm. Rec. at 123.

[104] *Id.*

[105] *Id.*

[106] *Id.* at 126.

[107] *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (citing *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986)).

[108] *Id.* (quoting *Fields*, 805 F.2d at 1170).

an individual claimant's limitations on his or her ability to perform a particular job."[109] Accordingly, "[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."[110]

Plaintiff argues that the vocational expert's testimony regarding the reaching requirements of Plaintiff's prior sedentary job was in direct conflict with the DOT's reaching requirements. The Appeals Council never stated that the testimony and the DOT were in direct conflict as Plaintiff suggests. The Appeals Council simply noted that "[i]f warranted by the expanded record," the ALJ should "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base" and "resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles."[111] A plain reading of the DOT illustrates that it is not in direct conflict with the vocational expert's testimony. The DOT states that Plaintiff's past relevant work requires frequent reaching; it does not indicate that it requires frequent overhead reaching.[112] The vocational expert testified that the DOT does not "parse out" how much overhead reaching is required in a given job as opposed to simple extension of the arm without an overhead component.[113] Therefore, the DOT requirements do not directly contradict the vocational expert's testimony that an individual with

---

[109] *Id.*

[110] *Id.* at 146.

[111] Adm. Rec. at 42.

[112] DICOT 169.167-034 (G.P.O.), 1991 WL 647430; DICOT 237.367-038 (G.P.O.), 1991 WL 672192; DICOT 219.387-014 (G.P.O.), 1991 WL 671978.

[113] Adm. Rec. at 123.

some overhead reaching ability in the non-dominant upper extremity and unlimited non-overhead reaching ability could perform Plaintiff's past sedentary work.[114]

Additionally, even if the DOT were in direct conflict with the vocational expert's testimony, Plaintiff has not demonstrated that the ALJ erred in relying on the vocational expert's testimony. Plaintiff argues that the vocational expert's testimony was unsubstantiated because the vocational expert testified that another expert might give a different opinion about the reaching requirements of Plaintiff's past work and because he testified that he had not "placed somebody with that type of restriction in a clerical position" for some time.[115] Plaintiff implies that the vocational expert's testimony was unsubstantiated because the testimony was based on the vocational expert's own experience. However, Plaintiff's attorney stipulated that the vocational expert was qualified to testify as an expert.[116] The fact that another expert may have provided a different opinion does not invalidate the opinion of the vocational expert in this case. Furthermore, the vocational expert testified that he could not identify a "specific place" where such a restriction occurred because he had not "placed somebody with that type of restriction in a clerical position" for some time.[117] This testimony does not invalidate the vocational expert's experience, as Plaintiff suggests. Although the vocational expert had not personally placed an individual with restrictions

---

[114] Adm. Rec. at 123.

[115] *Id*. at 123, 126.

[116] *Id*. at 126.

[117] *Id*.

similar to Plaintiff's restrictions in a clerical position for some time, the vocational expert testified that he was familiar with the physical requirements for these types of positions.[118]

Plaintiff essentially asks this Court to second guess the weight the ALJ gave to the testimony of the vocational expert. On appeal, this Court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[119] The ALJ determination that Plaintiff could perform her past relevant work as an office manager, scheduler, receptionist, and insurance clerk is based upon substantial evidence, including the vocational expert's testimony. Accordingly, Plaintiff's argument that the ALJ's opinion should be reversed on this basis is without merit.

2. **Whether the ALJ Erred by Failing to Assess Plaintiff's Headaches as a Severe Impairment**

Second, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supported the ALJ's determination that Plaintiff's headaches were a non-severe impairment.[120] Plaintiff notes that the Magistrate Judge highlighted instances in the record where Plaintiff refused injections or surgery as a treatment plan.[121] However, Plaintiff contends that her actions do not constitute a failure to follow the prescribed treatment as the Magistrate Judge characterized it because Plaintiff feared undergoing injections or surgery.[122] Additionally, Plaintiff asserts that the Magistrate Judge erroneously determined that the ALJ's failure to consider Plaintiff's headaches

---

[118] *See id*. at 120–26.

[119] *Newton*, 209 F.3d at 452.

[120] Rec. Doc. 15 at 8.

[121] *Id.*

[122] *Id.* at 9.

to be a severe impairment was not harmful because the ALJ considered the impairment in the subsequent steps.[123]

At Step Two of the sequential evaluation, the ALJ must determine which of the plaintiff's impairments are severe.[124] An impairment is not severe if it does not significantly limit a plaintiff's physical or mental ability to do basic work activities.[125] Under Fifth Circuit precedent, "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[126]

Here, the medical record contains reports from a series of examinations performed on Plaintiff by her treating physicians between August 2014 and July 2017, which detail Plaintiff's history of headaches and the physicians' prescribed treatment plans for this condition. On September 23, 2014, Dr. Daniel Trahant recommended epidural steroid injections to alleviate the pain resulting from Plaintiff's posterior headaches and noted that Plaintiff's prescribed medication "was helpful in breaking her headache."[127] On December 4, 2014, Dr. Trahant again recommended epidural steroid injections, following Plaintiff's reports that the benefits of the prescribed medications had waned.[128] On February 4, 2015, Dr. Trahant noted that Plaintiff had not proceeded

---

[123] *Id.*

[124] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[125] 20 C.F.R. § 416.922.

[126] *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

[127] Adm. Rec. at 391.

[128] *Id.* at 396.

with the recommended injections, based on a fear of needles and history of a family member's drug overdose.[129] On April 13, 2015, Dr. Trahant noted that Plaintiff had decided against receiving the recommended injections.[130] Upon examination in October 2015, Dr. Trahant, observed that the medication helped control Plaintiff's headaches.[131] On February 18, 2016, observing that the degree of pain in Plaintiff's posterior headaches had not changed, Dr. Trahant recommended that Plaintiff continue taking the medication as prescribed and consult a neurosurgeon for possible neurosurgical intervention.[132]

Dr. Trahant performed a neurological evaluation of Plaintiff on February 15, 2017, discussed Plaintiff's candidacy for spinal surgery to remedy her posterior headaches, and noted that Plaintiff stated "she was not ready for that step yet."[133] Dr. Trahant performed a follow-up neurological evaluation on June 30, 2017, during which Plaintiff reported a "continual headache for the past nine days" that was not alleviated by prescribed pain medications.[134] Dr. Trahant noted that the nine-day headache was "a fairly atypical situation for [Plaintiff], and usually her headaches do not last quite this long."[135] Dr. Trahant concluded that the extended headache was a result of a muscle contraction related to Plaintiff's cervical disc disease.[136] Therefore, Dr. Trahant concluded

---

[129] *Id.* at 398.

[130] *Id.* at 399.

[131] *Id.* at 729.

[132] *Id.* at 739.

[133] *Id.* at 756–57.

[134] *Id.* at 761.

[135] *Id.*

[136] *Id.*

that Plaintiff was "a strong candidate for cervical spinal surgery," and recommended that Plaintiff visit Dr. Andrew Todd for his opinion "concerning the advisability and potential success of surgery."[137] Plaintiff visited Dr. Todd for an examination on July 10, 2017, and Dr. Todd recommended that Plaintiff receive spinal surgery or epidural steroid injections.[138]

The record reflects that during the course of Plaintiff's medical treatment, multiple physicians strongly and consistently recommended spinal surgery or epidural steroid injections to mitigate the "atypical," long-term headaches that prescribed medication failed to alleviate. "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."[139] "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[140] A plaintiff's failure to follow the prescribed treatment without good reason is grounds for a finding that a plaintiff is not disabled.[141] The regulations do not reference fear of surgery and needles as an example of a "good reason" for failing to follow a prescribed treatment plan.[142] However, "[w]here the claimant fears undergoing prescribed surgery, the treating physician should be informed of this fact and asked about his or her current recommendation(s) for treatment. If the treating source decides against surgery, there

---

[137] *Id.*

[138] *Id.* at 765–68.

[139] *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citing 20 C.F.R. §§ 404.1530, 416.930; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987)).

[140] *Lovelace*, 813 F.2d at 59 (internal citations omitted).

[141] 20 C.F.R. § 404.1530(b).

[142] 20 C.F.R. § 404.1530(c).

is no issue of 'failure' unless the patient refused to cooperate in an alternative recommended course of treatment."[143]

The record reflects that Plaintiff's headaches were mitigated by prescribed pain medication. The record also shows that Plaintiff did not heed the advice of multiple physicians that she undergo surgery or epidural steroid injections. It appears that Plaintiff's treating physician, Dr. Trahant, was informed of Plaintiff's fears in 2015, and continued to recommend surgery as late as 2017. Therefore, Plaintiff's failure to follow the prescribed treatment can be considered grounds for a finding that Plaintiff's headaches are not severe.

Even assuming that the ALJ should have found that the headaches were a severe impairment, this error alone does not demand reversal of the ALJ's decision. As the Fifth Circuit has explained, when an ALJ proceeds to subsequent steps of the sequential evaluation analysis and denies benefits on that basis, any alleged error in not finding a specific impairment severe is harmless.[144] In *Dise v. Colvin*, the ALJ found that the plaintiff suffered from a severe mental impairment of oppositional defiant disorder.[145] On appeal, the plaintiff argued that the ALJ erred in failing to address whether the plaintiff's depression was also a severe impairment.[146] The Fifth Circuit found that this argument was meritless because "[t]he remainder of the opinion clearly reflects that the ALJ considered all of [the plaintiff's] claimed impairments (including depression)

---

[143] Titles II & XVI: Failure to Follow Prescribed Treatment, SSR 82-59 (S.S.A. 1982)

[144] *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) (per curiam).

[145] *Dise*, 630 F. App'x at 326.

[146] *Id.*

in his assessment of [the plaintiff's] disability, even though he only mentioned ODD at step two. In short, 'this case did not turn on whether or not [the plaintiff's depression] impairment was severe,' but on subsequent steps in the analysis."[147]

Plaintiff correctly notes that *Dise* is an unpublished opinion. However, the panel in *Dise* relied on several published Fifth Circuit opinions.[148] Although the opinion is not of precedential value, it is particularly persuasive in the instant case and reflects a current and correct statement of the law in this Circuit. Like in *Dise*, here, the ALJ's opinion clearly reflects that the ALJ considered all of Plaintiff's claimed impairments, including headaches, in her assessment of Plaintiff's disability. The ALJ's determination did not turn on whether Plaintiff's headaches were severe but on subsequent steps in the analysis. Therefore, Plaintiff's argument that the ALJ's opinion should be reversed on this basis is without merit.

### 3. Whether the ALJ Erred in Finding that Plaintiff's Impairments did not Meet the Criteria of Listing 1.04

The Magistrate Judge determined that the ALJ properly found that Plaintiff's impairments did not meet the criteria of Listing 1.04.[149] Plaintiff does not object to this portion of the report and recommendation. Accordingly, reviewing for plain error and finding none, the Court adopts that Magistrate Judge's finding that the ALJ's decision was supported by substantial evidence.

---

[147] *Id.* (quoting *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987)).

[148] *Id.* (citing *Chaparro*, 815 F.2d at 1011; *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir.1987).

[149] Rec. Doc. 14 at 30.

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision was based on substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** that the ALJ's decision denying Plaintiff's application for benefits is **AFFIRMED** and this case is **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA,** this 20th day of December, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**